UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

JODI ROY, individually, and **FIRST DAKOTA NATIONAL BANK** as Special Administrator of the Estate of CHRISTOPHER BRYON MARK JOHN ALBERTY, deceased,

Plaintiffs,

vs.

**LAKE COUNTY, SOUTH DAKOTA,**

**ROGER HARTMAN,** individually and in his capacity as the Lake County Sheriff,

**TIMOTHY WALBURG,** individually and in his capacity as a Lake County employee,

**REBECCA FIEGEN** individually and in her capacity as a Lake County employee,

**CHARLES PULFORD,** individually and in his capacity as a Lake County employee,

and

**OTHER UNKNOWN PERSONS,** individually and in their capacity as employees of Lake County, South Dakota,

Defendants.

**FILED**
APR 13 2012

CIV12-4070

COMPLAINT

---

1. The Plaintiffs, Jodi Roy, individually and First Dakota National Bank on behalf of the Estate of Christopher Alberty, deceased, institutes this action for compensatory and punitive damages due to Defendants' conduct that was deliberately indifferent to

Christopher Alberty's civil rights. These rights are insured to the deceased, Christopher Alberty, by the Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States of America; by 42 U.S.C. Subsection 1983; and by the laws and Constitution of the State of South Dakota.

2. The deceased, Christopher Alberty, was subjected to the above-mentioned deprivation of his rights by a series of acts and omissions by the Defendants. These acts were performed individually and in concert and under color of state law that resulted *inter alia* in the extreme suffering and death of Christopher Alberty while being held in the Lake County Jail.

## JURISDICTION

3. Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1343(a)(3). This action arises under 42 U.S.C. § 1983 to vindicate the deprivation of the rights and privileges of a citizen of the United States. This action is also brought pursuant to the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

4. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000) excluding interest and costs.

## VENUE

5. Venue is proper in the District of South Dakota, Southern Division pursuant to 28 U.S.C. Subsection 1391(b) as the Plaintiffs' claim arose in this District and Division and in that all times material all the Defendants did reside in this District and Division.

## PARTIES

6. Plaintiff Jodi Roy, an adult residing at 5442 Williams Street, Rapid City, South Dakota, is the natural mother of Christopher Alberty (hereinafter "Christopher") and a statutory beneficiary under South Dakota wrongful death statutes.

7. The deceased, Christopher Alberty, was an adult individual, 19 years of age, residing in Lake County, South Dakota, at the time of his death on October 18, 2009.

8. First Dakota is a nationally chartered bank and "regulated lender" under the laws of the State of South Dakota and the United States of America, with its principal place of

business located in Yankton, Yankton County, South Dakota. First Dakota has an established trust department and was appointed Special Administrator for Christopher's Estate on February 27, 2012 and received Letters of Special Administration on March 6, 2012.

9. At all times pertinent to this action each Defendant held the position indicated as more fully set out below and at all times pertinent to this action the Defendants were acting under color of state law and with the badges and indices of their governmental authority.

10. Defendant Roger Hartman is the Sheriff of Lake County and has the ultimate responsibility for the appropriate operation of the Lake County Jail and the safety and proper care of inmates.

11. Defendant Timothy Walburg is the Chief Deputy of the Lake County Sheriff's Department and in that capacity is the jail administrator. Chief Deputy Walburg, along with Sheriff Hartman, are responsible for establishing operating policies, procedures, and regulations to ensure the appropriate operation of the Lake County Jail, to guarantee the safety and proper care of the inmates, and training, supervision, and conduct of employee and officers at the Lake County jail.

12. Defendants Rebecca Fiegen and Charles Pulford were employees of Lake County at all times material. These Defendants directly supervised Lake County Jail inmates and had a duty to provide for the safety and well-being of inmates, including Christopher.

13. Other Unknown Persons ("Unknown") include various personnel including Lake County Sheriff Deputies, Lake County Jail Correctional Officers, Booking Officers and Jailers, individually and in their capacity as agents of Lake County.

14. Defendant Lake County ("Lake") is a governmental body formed under the laws of the State of South Dakota and maintains an office at 200 East Center Street, Madison, Lake County, South Dakota.

## FACTUAL ALLEGATIONS

15. On Thursday, October 15, 2009, at approximately 5 p.m., Christopher was taken into custody in Madison, Lake County, South Dakota. Christopher and his friend, Jeremy Woldt, were transported to the Lake County Sheriff's Office.

16. On arrival at the Sheriff's Office, Christopher told Chief Deputy Walburg that he wanted an attorney, which was confirmed by Detective Meyer. At 7:33 p.m. Christopher was processed into the Lake County Jail by Correctional Officer Rebecca Fiegen and Chief Deputy Walburg.

17. Christopher had suffered from mental health issues that required him to regularly take two prescription medications, Klonopin for anxiety, and Concerta for Attention Deficit Hyperactivity Disorder (ADHD). His condition was well known to Defendants.

18. Officer Fiegen and Chief Deputy Walburg knew of Christopher's medical problems. While processing Christopher into the jail, both officers discussed Christopher's prescription medications with him. Christopher stated he had ADHD and anxiety and took Klonopin and Concerta. Christopher also discussed self-mutilation marks on his arms.

19. Officer Fiegen specifically discussed with Christopher during this process that during his previous stay at the Lake County Jail, on or about October 3, 2009, that he became "extremely out of control because of the anxiety."

20. The officers and Christopher spent time discussing who could retrieve his medications but Christopher had a borrowed phone and no available phone numbers of friends who could retrieve the medications. Officer Fiegen emphasized to Christopher that "you need your meds. There's no ifs, ands, or buts. The meds have to get here."

21. Apparently unable to locate a friend to retrieve those medications, the officers dropped the subject. The medications were never provided to Christopher during his stay at the Lake County Jail.

22. Over the course of the weekend, Christopher had become severely depressed, was sleeping for long periods of time, and eating very little.

23. Since Defendants did not provide Christopher with his medications, he began an uncontrolled and unsupervised withdrawal. A side effect of withdrawal from Concerta is depression. Side effects of withdrawal from Klonopin includes personality changes, anxiety, depression, and confusion.

24. On the evening of Sunday, October 18, 2009, Lake County Correctional Officer Charlie Pulford exchanged garbage with Christopher at approximately 6:08 p.m.

25. The Lake County Sheriff Department protocol is to check the cells every 30 minutes unless an event occurs that takes precedence over checking of the cells. Shortly after the garbage exchange, an inmate was being transferred to the Minnehaha County Sheriff's Department. Officer Pulford assisted with that transfer from approximately 6:25 p.m. to 6:35 p.m. Since Lake County only has one jailer on staff at a time, regular cell checks are delayed by such transfers.

26. Christopher was last seen alive on videotape at 6:18 p.m.

27. Christopher's cell mate, Charles Wallowing Bull, Jr., was concerned about Christopher's depressed state and could see that Christopher was in trouble. Christopher told him he had been "down in the dumps lately" and that he had been beaten up by a drug dealer. Charles had spent the afternoon attempting to make Christopher happier by talking with him about football. Charles observed that Christopher was down and had not really eaten all weekend. At 6:45 p.m., he walked over to Christopher's bunk area, and thought he saw Christopher talking with other inmates through the vents. Suspicious because he did not actually hear Christopher talking, Charles again went back to check on him and discovered Christopher hanging from his bedding sheet at 6:46 p.m. Charles immediately yelled for the jailer.

28. At that time, Officer Pulford was making his rounds and not carrying his panic button or his radio. Upon arriving outside the cell and seeing Christopher, Officer Pulford

left the area for the control room to contact dispatch and request the assistance of another officer. When he came back, he locked some other cell doors.

29. During this time, Charles was yelling for help and Officer Pulford responded that he could not enter the cell. Charles was eventually able to lift Christopher, whose feet were actually touching the ground, and untie a blanket tied around a towel hook and Christopher's neck. Charles then laid Christopher on the floor.

30. Dispatch reports reflect that Officer Pulford requested a squad car for an attempted suicide at 6:46 p.m. Dispatch requested to be advised if medics were needed at the jail at 6:48 p.m. Officer Pulford entered the cell with Sargent Wollmann of the Madison Police Department at approximately 6:49 p.m. Officer Pulford advised dispatch at 6:53 p.m. that medics should come to the jail.

31. When Officer Wollman arrived at the cell, Charles was removed and placed in a holding cell. Only then did the Sargent Wollmann and Officer Jessee Ahlers, who arrived in the interim, begin to use the automated external defibrillator (AED) and perform CPR on Christopher.

32. An autopsy showed that Christopher died from hanging asphyxia.

## CAUSES OF ACTION
### Count 1
### Civil Action for Deprivation of Rights - 42 U.S.C. § 1983: Failing to Provide Medical Care (All Defendants)

33. Plaintiffs incorporate by reference all preceding paragraphs.

34. Governmental entities have an obligation to provide medical care for those whom they are incarcerating. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A detainee must rely on prison authorities to treat his medical needs; if the governmental authorities fail to do so, those needs will not be met. *Id.*

35. Defendants, with knowledge of Christopher's medical needs and with deliberate indifference to those medical needs, acted or failed to act in a way that deprived

Christopher of necessary and adequate medical care. Such acts and omissions of the Defendants violate rights secured to every citizen under the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

36. Defendants' failure to provide medication, failure to supervise Christopher's activities and movements while under their care, custody, and control, and their delay in the initiation of CPR among other items, either alone or in concert, resulted in extreme physical and mental pain and suffering, including emotional distress, and ultimately in Christopher's untimely death.

## Count 2

## Civil Action for Deprivation of Rights - 42 U.S.C. § 1983: Unlawful Policy, Custom, or Habit (Lake County Defendants)

37. Plaintiffs incorporate by reference all preceding paragraphs.

38. The Lake County Defendants had a duty to provide medications to treat Christopher's medical conditions and knew or should have known he would suffer serious bodily injury or death if the medications were not provided. Additionally, the Lake County Defendants failed to properly supervise, control, and house Christopher and failed to follow normal and accepted practices and procedures for detention facilities.

39. Defendants Hartman, Walburg, and Lake County had a duty to develop and implement the polices and practices to properly administer the jail facility. Defendants also have a duty to properly supervise the implementation of those policies and practices. Defendants failed and neglected to: (a) establish and implement policies, practices, and procedures designed to assure that inmates receive medical treatment and care as required, (b) properly implement those policies and practices as they applied to Christopher, (c) adequately and properly train employees of the jail facility on handling inmates who constitute a danger to themselves and in questioning inmates with suicidal tendencies, (d) adequately staff the facility, and (e) respond to emergencies in a timely manner.

40. The Lake County Defendants acts and omissions constitute deliberate indifference to Christopher's obvious and serious medical needs, constituting punishment in violation of Christopher's right guaranteed by the Fourteenth Amendment to the United States Constitution.

### Count 3
### Wrongful Death
Roy v. All Defendants

41. The Plaintiffs incorporate by reference all preceding paragraphs.

42. Christopher's death was proximately caused, at a minimum, by the wrongful acts, omissions, neglect, or default of the Defendants as previously set forth.

43. As a direct and proximate result of the death of Christopher, his mother, Jodi, has been deprived of future support, love, care, comfort, affection, aid, society, presence, companionship, counsel, protection, and services.

44. As a further direct and proximate cause of Christopher's death, medical, funeral, and burial expenses have been incurred.

### Count 4
### Survival Action

45. The Plaintiffs incorporate by reference all preceding paragraphs.

46. Before his untimely and wrongful death and during the course of Defendants' incarceration of Christopher, he suffered medication withdrawal, depression, severe emotional distress, pain, suffering, including contemplation of his pending death, as well as other personal injuries as a direct and proximate result of Defendants' actions or inactions.

### Count 5
### Punitive Damages

47. The Plaintiffs incorporate by reference all preceding paragraphs.

48. The Defendants' actions or inactions as previously set forth give rise to punitive damages in that Defendants' actions and omissions alleged herein were undertaken with malicious and wanton disregard for the rights of Christopher.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1) The Court determine and enter judgment declaring that the acts, and omissions of the Defendants, as set forth above, violated rights secured to Christopher Alberty by the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

2) Upon hearing, the Court issue a preliminary and permanent injunction:

    a) Requiring the Defendants, their employees, agents, and successors to treat individuals who require prescription medications in a manner consistent with the appropriate standards of medical care and treatment;

    b) Requiring the Defendants, their employees, agents, and successors in office to provide necessary medical treatment to individuals requiring prescription medications and to properly supervise those inmates with propensities toward suicide being admitted to the Lake County Jail; and

    c) Requiring, at a minimum, the Defendants, their employees, agents, and successors to follow appropriate policies and procedures at the Lake County Jail when dealing with individuals in need of medications or with suicidal tendencies.

    d) Requiring, at a minimum, the Defendants, their employees, agents, and successors to meet basic staffing and emergency care standards.

3) The Court award general damages to Plaintiffs;

4) The Court award punitive damages to Plaintiffs;

5) The Defendants be required to pay the legal costs and expenses in this action, including reasonable provision for Plaintiffs' attorney's fees under 42 U.S.C. § 1988; and

6) The Court grant such further and additional relief that is appropriate.

Dated this 11th day of April, 2012.

Michael F. Marlow
Beth A. Roesler
Johnson, Miner, Marlow, Woodward & Huff, Prof. LLC
PO Box 667
200 W. Third St.
Yankton, SD 57078
Telephone: (605)665-5009
Facsimile: (605)665-4788
Email: mikem@jmmwh.com, beth@jmmwh.com

Attorneys for Plaintiffs